JOHN P. CHAKOS, Plaintiff, *v.* PAUL E. MORDEN et al., Defendants.

Supreme Court, Equity Term, Niagara County, December 3, 1953.

*Hovey & Kushner* for plaintiff.

*Eugene M. Downey* for defendants.

FISHER, J. The plaintiff conducting a restaurant business in the city of Niagara Falls, New York under the name of " The Colonial " seeks to restrain and enjoin the defendants from conducting a restaurant business within the same city under the name of " Colonial House ".

For the past twenty-seven years, the plaintiff has operated a restaurant at 39 Falls Street in the city of Niagara Falls, New York. From 1926 to 1936, he used the name " Colonial Tea Room " and registered said name in 1933, but in 1939, he remodeled and thereafter placed a large sign on the outside of his building with the name " The Colonial ". He then changed his menus, stationery and other equipment to that name including all of his dishes, but did not change his registered trade name until February 2, 1953, when he filed assumed name certificates as doing business under the name of " Colonial Restaurant " and " Colonial House ". On August 13, 1953, he amended his 1933 certificate changing from " Colonial Tea Room " to " The Colonial " and commenced this action.

The Colonial has a seating capacity of 200, serves regular meals, full course lunches and dinners as well as à la carté. Dur-

ing the summer tourist season plaintiff serves approximately 1,200 meals daily. The plaintiff also has an on-premises alcoholic beverage license, and operates part of his premises as a bar and cocktail lounge. Plaintiff in the past has advertised in publications and over the radio and has distributed about 48,000 picture postal cards advertising his business under the name of "The Colonial."

Niagara Falls, New York has a population of approximately 90,000 and Falls Street is one of several principal streets of the city. The plaintiff's restaurant is located at 39 Falls Street on the south side of the street in the so-called tourist area, a block or two from the Niagara River, the park and the falls.

In February, 1953, a telephone booth was delivered to plaintiff's place of business and the plaintiff, not having ordered a booth, questioned the delivery and learned for the first time that a restaurant called the "Colonial House" was being prepared to open, a block away, at numbers 43–45 Falls Street, on the same side of the street, between plaintiff's place of business and the river, the falls and Canada, in a place where Canadians. tourists and others coming to the city would first pass the Colonial House before arriving at plaintiff's restaurant. A few days later a truck driver came to the restaurant with a door frame for delivery to the defendants' restaurant. On several occasions mail was delivered to the plaintiff intended for the defendants, and lumber was billed to the "Colonial Restaurant". Newspaper advertising and bills intended for the defendants were delivered to the plaintiff, and after the insertion of an advertisement for a cashier by the defendants, numerous applicants applied to the plaintiff for the job.

The plaintiff under the name of Colonial Tea Room known to the trade as "The Colonial" during the past twenty-seven years built up a good reputation for full course dinners and à la carte meals as well as good beverages. His Canadian patrons, of which he had many, and tourists knew "The Colonial" to be located on the south side of Falls Street near the falls. For many years the defendant Paul E. Morden lived across the street from the plaintiff's place of business at 38 Falls Street. In 1952, he contacted the representatives of the defendant Colonial House Restaurants, Inc. and entered into a contract with them to obtain a franchise to operate a restaurant under their name and management at 43-45 Falls Street. On October 5, 1953, the restaurant was opened under the terms of the franchise and a sign was erected on the premises facing Falls Street with the name of "Colonial House Restaurant".

The listing of the name started on December 19, 1947, when a certificate of assumed name was filed in Erie County Clerk's office by Harry M. Coons, William H. Coons & Donald R. Koch. On March 29, 1949, a certificate of incorporation was filed in Albany for "Colonial House Restaurants, Inc." In May, 1951, an assumed name certificate of "Colonial House Restaurants" was filed in Erie County by the same parties and Eugene M. Downey. In November, 1952, demolition work was started for the new restaurant at Niagara Falls but this was not known to the plaintiff at that time. On September 25, 1953, a temporary injunction was granted restraining defendant from doing business at the Niagara Falls address under the name of "Colonial House Restaurant" until the rights of the parties were determined by this action.

The history of operation by the defendant Colonial House Restaurants, Inc., begins in 1948, by the opening of a restaurant in Buffalo, New York. Subsequently they opened and operated in Williamsville, two restaurants on Main Street, Buffalo, one at the Thruway, and one at Franklin Street, Buffalo, all in the county of Erie.

These restaurants serve food only, cook all food in sight, have counter as well as table service. They do not specialize in full course dinners or serve alcoholic beverages.

The same architect has been used by them in supervising the construction of all of the restaurants operated by them and under their franchise. The colonial atmosphere has been created throughout by decorations and design.

Both the plaintiff's restaurant and those operated under the defendants' franchise are desirable places but are of a distinctively different type, and the defendants admit that the Falls restaurant is doing fine in spite of being operated under the name of "Morden Restaurant."

There is no evidence that the officers of defendant Colonial House Restaurants, Inc., had ever heard of the plaintiff's restaurant when they amended their name as incorporated or that they incorporated under that name for the purpose of doing business in Niagara Falls. The defendant Paul E. Morden, the operator, however, knew of the plaintiff's place across the street from him for many years and was familiar with the plaintiff's business.

Had the defendants using the name "Colonial House Restaurants" located on some other street in the city of Niagara Falls, possibly the similar name would not be so confusing to the public to the detriment of the plaintiff, but to locate on

the same street on the same side of the street, within a block, from 300 to 600 feet from the plaintiff, between the plaintiff's place of business and the park, the river, the falls and on the principal thoroughfare and entrance from Canada without a doubt has led and will lead to confusion by the public, the potential customers of the plaintiff, regardless of whether it was the fraudulent intention of the defendants to cause this confusion.

The defendants insist that the plaintiff must establish that there was a wrongful, fraudulent and actual intention to deceive the public on the part of the defendants resulting in actual confusion.

This is an action for a permanent injunction. The Court of Appeals, as far back as 1893, held that where preventative relief is asked, the question of wrongful or fraudulent intent is not at issue (*Taendsticksfabriks Akticbalagat Vulcan* v. *Myers,* 139 N. Y. 364, 368). Earlier, in 1877, the same court held: '' Neither is it necessary to establish a guilty knowledge or fraudulent intent on the part of the wrong-doer.'' (*Colman* v. *Crump,* 70 N. Y. 573, 578–579.)

In examining the more recent decisions of the Court of Appeals, in no case does that court or any of the appellate courts hold that there must be a wrongful, fraudulent and actual intention to deceive in an action where equitable intervention is sought.

One of the more recent cases decided in 1927, and most frequently quoted in later decisions is *Eastern Constr. Co.* v. *Eastern Eng. Corp.* (246 N. Y. 459). Although the Supreme Court and Appellate Division were reversed and the injunction denied on the grounds that the nature of the business (submitting bids for construction of public buildings) in which the defendants compete with the plaintiffs reduces almost to the vanishing point the possibility of deception and damage, the ruling case law on page 462 is '' a court of equity may restrain them from using methods of competition which are unfair.'' '' Justification, if any, for the injunction must rest upon a finding that the corporate name which the defendant has adopted, with the sanction of the State, is so similar to the name under which plaintiff conducts its business that the public may be confused and that some persons may do business with the defendant in the belief that they are dealing with the plaintiff.'' (*Eastern Constr. Co.* v. *Eastern Eng. Corp.,* 246 N. Y. 459, 462, *supra.*)

The defendants call to the court's attention a Court of Appeals decision in the case of *Fisher* v. *Star Co.* (231 N. Y. 414) and quote from that case the following on page 427: " Such conduct as is calculated to deceive the public into believing that the business of the wrongdoer is the business of him whose name, sign or mark is simulated or appropriated can be restrained in equity. (Citing cases.) The courts are not confined in the exercise of their equitable powers to preventing unfair competition among the manufacturers of and dealers in goods. The controlling question in all cases where the equitable power of the courts is invoked is, whether the acts complained of are fair or unfair. The determination of this appeal depends first and primarily upon the facts."

This court emphasizes the last sentence quoted above that the appeal in that case depends first and primarily on the facts; it therefore follows that that is the rule to apply in this case or any other case whether a court is called upon to render preventative relief in the form of a permanent injunction after a trial of issues.

The defendant Morden did not act in good faith when he went to the defendant Colonial House Restaurants, Inc. and secured a franchise to open a restaurant and put up a sign " Colonial House ", within a stone's throw of the plaintiff's restaurant " The Colonial " particularly since defendant Morden lived across the street from " The Colonial " for many years and was familiar with the plaintiff's business. Regardless of whether Morden and the officers of the defendant Colonial House, Inc. acted in bad faith, their very actions resulted in using a name so similar to " The Colonial " or " The Colonial Tea Room " that the public has been and may be confused in the future, and that persons may do business with the defendants in the belief that they are dealing with the plaintiff. That is all the proof necessary under the cases. " [A] true test is whether the resemblance is calculated to produce confusion as to the identity and consequent damage. (*Eastern Construction Co.* v. *Eastern Engineering Corp.*, 246 N. Y. 459.)" (*Louis Restaurant* v. *Coffey*, 132 Misc. 690, 692.) The defendant Morden's conduct, together with that of the officers of the defendant Colonial House Restaurants, Inc. resulted in unfair competition with the plaintiff, and the defendants should be restrained from using the name " Colonial House ", or any name similar to the Colonial in the city of Niagara Falls, New York.

Submit order.